142 Nev., Advance Opinion 29

THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LENNAR COMMUNITIES NEVADA, LLC, A DOMESTIC LIMITED LIABILITY COMPANY; AND GREYSTONE NEVADA, LLC, A FOREIGN LIMITED LIABILITY COMPANY, Appellants, vs. PAMELA WHALEN, AN INDIVIDUAL, Respondent. | No. 88946 **FILED** APR 16 2026 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY _____ CHIEF DEPUTY CLERK |

Appeal from a district court order denying a motion to compel arbitration. Eighth Judicial District Court, Clark County; Tierra D. Jones, Judge.

*Affirmed.*

Newmeyer & Dillion LLP and Aaron D. Lovaas and J. Nathan Owens, Las Vegas,
for Appellants.

Ryan Alexander, Chtd., and Richard A. Englemann and Ryan Alexander, Las Vegas,
for Respondent.

---

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

26-17456

## *OPINION*

By the Court, BELL, J.:

Respondent Pamela Whalen allegedly sustained personal injuries when she tripped over a utility box located on property owned and maintained by Appellants Lennar Communities Nevada, LLC, and Greystone Nevada, LLC (collectively Lennar). Prior to the accident, Pamela signed an agreement to purchase a home from Lennar. The agreement included an arbitration clause. After the accident, Pamela sued Lennar, and Lennar answered the complaint and demanded a jury trial. After 17 months of extensive discovery, Lennar filed a motion to compel arbitration. The district court denied the motion on the grounds that the dispute is outside the scope of the arbitration clause, without addressing whether Lennar had waived its right to arbitration through its actions in the legal proceeding. Lennar appeals.

We conclude the district court erred by interpreting the scope of the relevant arbitration clause, as the contract clearly and unmistakably delegated this question to the arbitrator. We also conclude, however, that Lennar waived its right to arbitration. Lennar filed an answer, demanded a jury trial, actively pursued discovery, including three medical examinations of Pamela under NRCP 35, and even stipulated to continue the trial to allow for additional discovery. In doing so, Lennar acted inconsistently with its right to arbitrate. Because the district court correctly declined to send the case to arbitration, we affirm the district court's determination, though we do so on the basis of waiver rather than on contract interpretation grounds.

*FACTS AND PROCEDURAL HISTORY*

In 2020, Brian Whalen bought a new house from Lennar (the Fern Ridge Property). Brian signed a Purchase and Sale Agreement (PSA). In February 2021, Brian's fiancée Pamela signed an Amendment to Change Party to be included as a purchaser. The amendment incorporated the PSA by reference. Brian and Pamela later married, but Brian is not a party to this lawsuit.

In the summer of 2021, Pamela toured the same Lennar community where the Fern Ridge Property was located. A Lennar employee led the tour. During the tour, Pamela tripped over an open or loose utility box in the community and sustained injuries. The utility box was not on the Fern Ridge Property.

Following her injury, Pamela sued Lennar, filing her initial complaint for negligence on September 13, 2022. With its answer, Lennar filed a demand for a jury trial. The parties then began extensive discovery. Lennar filed an initial disclosure of witnesses, documents, and evidence, followed by nine supplemental disclosures. Both parties issued and answered interrogatories and requests for the production of documents. The parties stipulated to extend discovery, resulting in the trial date being reset. Lennar also filed initial expert disclosures and two supplemental expert disclosures. In February 2024, Pamela participated in three NRCP 35 medical examinations at Lennar's request, including examinations by an orthopedic surgeon, a plastic surgeon, and a psychiatrist. Throughout this process, Lennar failed to assert the right to arbitrate as an affirmative defense or otherwise.

Lennar requested that Pamela submit the matter to binding arbitration for the first time in March 2024. Pamela declined to stipulate to the arbitration. Lennar then filed a motion to compel, citing the

arbitration clause within the PSA. The PSA between the parties required all disputes to first go to mediation and then, if not resolved, to arbitration. Furthermore, the PSA noted all disputes were to be submitted to arbitration within a "reasonable time after such Dispute has arisen." The district court denied Lennar's motion to compel arbitration, determining the dispute is not covered by the arbitration clause. Lennar appeals.

## DISCUSSION

The district court reached the correct result when it denied Lennar's motion to compel arbitration. We reach this conclusion, however, on different grounds than the district court. Specifically, although the district court erred in interpreting the PSA's scope, we conclude Lennar waived its right to compel arbitration.

*The district court erred in interpreting the scope of the arbitration clause, as this falls within the purview of the arbitrator*

As noted, the district court based its denial of Lennar's motion chiefly on its interpretation of the PSA. The district court found that Pamela injured herself at a place outside the area covered by the PSA. Thus, the district court found Pamela's claim was not arbitrable. We conclude this was error. The district court should not have reached this question, as the PSA delegated questions of arbitrability to an arbitrator. When an arbitration agreement under the Federal Arbitration Act clearly and unmistakably delegates the threshold issue of arbitrability to the arbitrator, the district court may not interpret the scope of the contract to determine arbitrability. *Uber Techs., Inc. v. Royz*, 138 Nev. 690, 694, 517 P.3d 905, 909 (2022). Here, the district court concluded the arbitration clause in the PSA did not apply to Pamela's injury because the accident occurred on property outside of the house subject to the PSA. The arbitration agreement provided, however, that "[a]ll decisions respecting

arbitrability of any Dispute shall be decided by the arbitrator(s)." Our decision in *Uber Technologies* makes clear the district court should not have interpreted the scope of the PSA, as the contract clearly and unmistakably delegates this issue to the arbitrator. Thus, the district court erred when it considered the scope of the PSA in denying Lennar's motion to compel arbitration.

*Lennar waived its right to arbitrate this dispute*

While the district court resolved the motion to compel arbitration on improper grounds and did not address Pamela's argument about waiver, Pamela urges us to conclude Lennar waived its right to arbitration. We agree. Because Lennar waived arbitration, we conclude the district court reached the right result in denying Lennar's motion, though for the wrong reason. A district court's decision regarding a motion to compel arbitration usually presents mixed questions of law and fact. *Gonski v. Second Jud. Dist. Ct.*, 126 Nev. 551, 557, 245 P.3d 1164, 1168 (2010), *overruled on other grounds by U.S. Home Corp. v. Michael Ballesteros Tr.*, 134 Nev. 180, 415 P.3d 32 (2018). Factual findings by the district court are given deference, but questions of law are reviewed de novo. *Id.*

Waiver in the context of compelling arbitration is presumptively for the courts to decide, absent contractual language clearly committing the question to the arbitrator. *Principal Invs., Inc. v. Harrison*, 132 Nev. 9, 11, 366 P.3d 688, 690 (2016). Even though "[w]aiver is generally a question of fact," this court may address the issue as a matter of law where "the determination rests on the legal implications of essentially uncontested facts." *Nev. Gold & Casinos, Inc. v. Am. Heritage, Inc.*, 121 Nev. 84, 89, 110 P.3d 481, 484 (2005) (noting that the lack of factual determinations by the district court did not preclude waiver where the parties did not dispute the

pertinent facts, including that they incurred costs and "necessarily disclosed" litigation strategies).

"Waiver is not a favored finding and should not be lightly inferred." *Harrison*, 132 Nev. at 20, 366 P.3d at 696-97. This court has held waiver exists where a party (1) knows of their right to arbitrate, (2) acts inconsistently with that right, and (3) prejudices the other party. *Nev. Gold*, 121 Nev. at 91, 110 P.3d at 485. Lennar's conduct satisfies all three elements of this test.

First, Lennar knew of its right to arbitrate. The PSA originated with Lennar and its counsel. Moreover, a Lennar representative signed the PSA alongside Pamela. Accordingly, we conclude Lennar had knowledge of the right to arbitration.

Next, Lennar acted inconsistently with its right to arbitrate. A party acts inconsistently with the right to arbitrate by actively litigating the "same legal and factual issues as those the party now wants to arbitrate." *Harrison*, 132 Nev. at 21, 366 P.3d at 697 (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997)). Other jurisdictions have employed a totality-of-the-circumstances analysis to determine whether a party utilized "litigation machinery." *See Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 775 (D.C. Cir. 1987). In this vein, courts have found a party waived arbitration when it filed pleadings, submitted a motion to dismiss, and waited two years to move for arbitration. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988). Although this court has not expressly adopted the totality-of-the-circumstances analysis, we have implicitly applied it. In *Harrison*, for instance, this court concluded a payday loan company had waived arbitration with respect to class action fraud claims by borrowers

SUPREME COURT
OF
NEVADA

(O) 1947A

6

because the lender had previously obtained default judgments on the underlying collection claims against the borrowers in justice court. 132 Nev. at 22, 366 P.3d at 697. Reviewing all the pertinent circumstances and observing the lender had actively litigated the collection claims, we concluded the lender had also waived arbitration on any other "integrally related" claims. *Id.*

We now take this opportunity to expressly hold that courts should consider the totality of the circumstances when evaluating whether a party has already litigated an issue it subsequently seeks to arbitrate. Under the totality of the circumstances, Lennar actively litigated this case prior to arbitration. First, Lennar substantially utilized the district court's discovery mechanisms that are normally featured in litigation, not arbitration. Indeed, Lennar's actions here were significant and unequivocally inconsistent with arbitration. At the case's outset, Lennar filed an answer and demanded a jury trial. After this jury demand, Lennar engaged in substantial discovery, including making numerous initial and supplemental disclosures and issuing and answering various interrogatories and requests for the production of documents. Lennar also conducted three NRCP 35 medical examinations of Pamela. During this time, Lennar made no assertion of its right to arbitrate under the PSA, despite the PSA's requirement that a dispute between the parties be submitted to arbitration within a reasonable time after the dispute arose. Only after Lennar obtained written discovery and the results of the NRCP 35 examinations did Lennar filed its motion to compel arbitration.

We also consider Lennar's 17-month delay in seeking arbitration. Even if such an extended passage of time could conceivably be excusable, waiver is unavoidable when the party moving for arbitration

SUPREME COURT
OF
NEVADA

(O) 1947A

engages in conduct contrary to the arbitration process. Lennar argues that it did not file any dispositive motions prior to moving to compel arbitration and, therefore, it has not acted inconsistently with its right to arbitrate. Lennar does not cite any authority for the proposition that a finding of waiver must be predicated upon the filing of a dispositive motion. Instead, courts should consider the totality of the circumstances to determine whether a party actively litigated an issue it subsequently seeks to arbitrate. Here, Lennar repeatedly utilized court mechanisms to a substantial degree and conducted multiple medical examinations. Lennar also failed to request arbitration until 17 months into litigation. As a result, the totality of the circumstances indicates Lennar acted inconsistently with its right to arbitrate.

Third, Lennar prejudiced Pamela. This Court has previously determined prejudice to the party opposing arbitration is the primary focus in considering whether the right to arbitrate has been waived. *Nev. Gold*, 121 Nev. at 90, 110 P.3d at 485. We acknowledge that this focus on prejudice stems from federal caselaw that has since been abrogated. *See id.* (adopting test set forth in *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003)); *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022) (concluding prejudice was not a factor within the traditional federal waiver analysis and abrogating, in part, *Kelly v. Golden*). No party argues against the continued use of the prejudice factor under Nevada law, however, and thus based on our precedent, we will address the issue of prejudice to an opposing party within a waiver analysis. *See, e.g., Jenkins v. Ford Motor Co.*, 425 So. 3d 1011, 1020-21 (Miss. Ct. App. 2025) ("While it appears to this Court that the United States Supreme Court has indeed eliminated the prejudice element, we must follow current Mississippi Supreme Court precedent and,

therefore, address prejudice out of an abundance of caution."). Prejudice to a party exists (1) when the parties use discovery not available in arbitration, (2) when they litigate substantial issues on the merits, or (3) when compelling arbitration would require a duplication of efforts. *Nev. Gold*, 121 Nev. at 90-91, 110 P.3d at 485.

We conclude Lennar's actions satisfy the first and third prongs of the test for prejudice. First, it is not clear that Lennar would have been able to conduct the full extent of the three NRCP 35 examinations in arbitration. In fact, it is not clear that Lennar would have been able to conduct any such examinations at all. We have not yet determined whether an arbitrator has authority under NRS 38.233 to order a party to submit to an NRCP 35 medical examination, and we need not address this question here. Generally, "a party to arbitration has no legal right to prehearing discovery," and "discovery is the exception, not the norm." 21 *Williston on Contracts* § 57:97. Where discovery is permitted in arbitration, its scope is "not coextensive with that which occurs in the course of civil litigation under . . . rules of civil procedure." *Id.* Here, Lennar conducted not just one, but three examinations under NRCP 35. Given that it is unclear whether even a single NRCP 35 examination would be permitted in arbitration, it is even more unlikely that an arbitrator would permit multiple examinations. In other words, Lennar's utilization of the three NRCP 35 examinations enabled it to obtain discovery that may not have been available in arbitration.

Next, arbitration at this stage, after 17 months of active litigation, would require a duplication of efforts. This court has previously concluded that allowing arbitration after 18 months of "vigorous litigation" would permit a party to "'test[ ] the judicial waters, and to do so for as long

as he liked, even to the . . . brink of resolution, and then nullify[ ] all that has gone before by demanding arbitration.'" *Nev. Gold*, 121 Nev. at 91, 110 P.3d at 485 (quoting *Uwaydah v. Van Wert Cnty. Hosp.*, 246 F. Supp. 2d 808, 814 (N.D. Ohio 2002)). We conclude Lennar's actions are similar to those in *Nevada Gold*, where a party belatedly filed a motion to compel arbitration on the "eve of trial." *Id.* Here, it is clear that submitting this case to arbitration at this point, after the parties have engaged in 17 months of litigation, would unquestionably require a duplication of the parties' efforts.

Because Lennar has likely obtained discovery unavailable in arbitration and going to arbitration at this point would require the parties to duplicate the efforts they have already expended in litigating this case, Lennar has prejudiced Pamela. Therefore, because Lennar (1) knew of its right to arbitrate, (2) acted inconsistently with this right, and (3) prejudiced Pamela, we conclude Lennar waived its right to arbitrate this dispute. Though the district court improperly proceeded to interpret the arbitration clause's scope, we nonetheless affirm its ultimate determination. *See Saavedra-Sandoval v. Wal-Mart Stores, Inc.*, 126 Nev. 592, 599, 245 P.3d 1198, 1202 (2010) (this court affirms the district court's ruling "if the district court reached the correct result, even if for the wrong reason"). As we conclude the district court reached the proper result in denying Lennar's motion to compel arbitration, we need not consider the parties' arguments concerning the statute of limitations.

*CONCLUSION*

We hold that a party who delays seeking arbitration and avails itself of the discovery process may be deemed to have waived its right to arbitrate, notwithstanding the absence of any dispositive motions in the case, if the totality of the circumstances demonstrate the party actively

litigated an issue it subsequently seeks to arbitrate. Lennar's 17-month delay and litigation conduct, taken together, constitute waiver. The district court reached the correct result in denying Lennar's motion to compel. Accordingly, we affirm the judgment of the district court and remand this case for further proceedings consistent with this opinion.

_____, J.
Bell

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A